# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ERIC D. SIMS,

        *Plaintiff,*

  vs.

        Case No. 18-01259-EFM-KGG

KANSAS DEPARTMENT OF
CORRECTIONS, et al.,

        *Defendants.*

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants Kansas Department of Corrections ("KDOC") and Joe Norwood's respective motions to dismiss. Additionally, the Court is prepared to rule on three motions filed by Plaintiff Eric Sims: a motion to stay the case, for leave to file a supplemental response, and to sever two claims. For the following reasons, the Court grants Defendant Kansas Department of Corrections' Motion to Dismiss (Doc. 17) and Defendant Joe Norwood's Motion to Dismiss (Doc. 18). And the Court denies Plaintiff Eric Sims' Motion to Stay and for Leave to File a Supplemental Response (Doc. 40), Motion for Leave to File a Supplemental Response (Doc. 45), and Motion to Sever (Doc. 48).

## I.      Factual and Procedural Background[1]

Sims has been an inmate in the custody of KDOC since 1993.  During his incarceration, Sims became involved with Heritage Family Church's Kansas Apostolic Prison Ministry ("KAPM") and developed a relationship with the church's pastor, Jonathan Dudley.  Although Sims states that he converted to the Apostolic Faith approximately 20 years ago, Sims first informed KDOC, via a change of religion request form, that he was a member of the Apostolic Faith in 2008.  The essential tenets of Sims' religious beliefs include participating in weekly worship services, taking communion, being baptized, and wearing long-sleeved clothing to promote modesty.  Additionally, Sims' religious beliefs preclude him from worshiping with members of any other faith, including all Protestant denominations.

Since at least 2016, Sims has made repeated requests that KDOC officially recognize the Apostolic Faith as its own distinct religion separate from Protestantism.  Sims alleges that KDOC allows 17 different religions to hold weekly group worship services—what the parties refer to as "call-outs"—but does not offer call-outs for members of the Apostolic Faith at every KDOC facility.  Sims alleges that KDOC's lack of separate Apostolic services forces him to either worship with Protestants (a violation of his religious beliefs) or abstain from worshiping entirely (also a violation of his religious beliefs).  Given this choice, Sims has refused to attend a single Protestant or Ecumenical service in the last 20 years.

In addition to weekly call-outs, Sims has made other requests for religious accommodation.  For example, Sims requested religiously sanctioned clothing in the form of long-sleeved shirts.  Although KDOC approved his request, Sims takes issue with the length of time it took KDOC to

---

[1] The facts are taken from Sims' Complaint and are accepted as true for the purposes of this ruling.

do so: approximately three months.  Sims also submitted a request for Pastor Dudley to use the prison's chapel for a baptism service; Sims did not seek to be baptized at this service but was requesting permission on behalf of 12 other Apostolic inmates.  KDOC denied the request and stated that Apostolic inmates must have their baptisms performed by a Protestant pastor.  Sims also alleges that he and two other Apostolic inmates were restricted from holding a Bible study during their free time even though inmates of other faiths were allowed to engage in religious study under similar circumstances.  Finally, Sims ordered several Apostolic books and materials that KDOC's mailroom received but never distributed to him.  In general, Sims alleges that KDOC officials either failed to respond to his requests for religious accommodation or provided incomplete responses.

On May 5, 2018, Sims—in conjunction with Pastor Dudley and Heritage Family Church—sent a demand letter to KDOC outlining potential legal action and demanding the following concessions: that KDOC recognize the Apostolic faith as a discrete religion and allow Apostolic inmates at all KDOC facilities to hold separate weekly services, be baptized by an Apostolic minister, and wear long-sleeved shirts.  Approximately two weeks after sending the demand letter, KDOC transferred Sims pursuant to the Kansas Interstate Compact statute to a Florida Department of Corrections ("FDOC") facility in Orlando, Florida.  According to Sims, KDOC officials provided several competing reasons for his transfer, including that Sims was transferred for "security" or "housing" reasons, that he had "compromised [prison] staff and volunteers," that he

was "misleading legislators,"[2] and that Sims filed a complaint with the U.S. Department of Justice's Bureau of Justice Assistance regarding wages paid to inmate workers.

Sims, Heritage Family Church, and Pastor Dudley filed suit for injunctive relief against KDOC as well as 11 KDOC officials, including Joe Norwood, who at the time was KDOC's Secretary of Corrections.  Heritage Family Church and Pastor Dudley have since voluntarily dismissed all claims against all defendants and are no longer parties in this lawsuit.  Sims voluntarily dismissed his claims against every defendant except KDOC and Norwood.  Sims' Complaint brings the following claims: (Count 1) Religious Land Use and Institutionalized Persons Act ("RLUIPA") violation; (Counts 2–3) First Amendment Free Exercise, Free Speech, and Free Assembly violations; (Counts 4–5) Fourteenth Amendment Equal Protection and Due Process violations; (Count 6) First Amendment retaliation; and (Counts 7–8) Kansas Constitution Free Exercise, Free Speech, and Free Assembly violations.

Sims' request for injunctive relief is extraordinarily broad.  The abridged version includes an order from the Court that KDOC return Sims to EDCF, that KDOC be prohibited in perpetuity from transferring Sims to a different facility, that KDOC officially recognize the Apostolic faith as a discrete religion, and that KDOC provide various accommodations to Apostolic inmates at all KDOC facilities.

Shortly after filing this suit, Sims filed a motion for a preliminary injunction or temporary restraining order.  The Court held a hearing on the motion and ultimately denied it.[3]  The two defendants remaining in this lawsuit, KDOC and Norwood, filed motions to dismiss.  When Sims

---

[2] Sims had sent a packet to Laura Kelly, who at the time was a Kansas Senator, containing newspaper articles discussing problems at KDOC facilities.

[3] *Heritage Family Church, Inc. v. Kansas Dep't of Corr.*, 2018 WL 6065248, *1 (D. Kan. 2018).

filed his original responses to these motions, he was represented by counsel.  After both motions were fully briefed, Sims' counsel withdrew from the case.  Proceeding pro se, Sims filed a motion requesting the Court stay ruling on the dispositive motions and allow him to file a supplemental response; a month later, Sims filed another motion seeking leave to file a supplemental response and he attached a copy of his proposed pleading.  Finally, Sims has filed a motion to sever Counts 5 and 6 from this case and for the Court to order the Clerk of the Court to docket a new case specifically on those claims.

## II.    Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a party may move for dismissal of "a claim for relief in any pleading" that fails "to state a claim upon which relief can be granted."  Upon such motion, the Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[4]  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient;" rather, the pleading "must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[5]  The Court does not "weigh potential evidence that the parties might present at trial," but assesses whether the complaint "alone is legally sufficient to state a claim for which relief may be granted."[6]  In determining whether a claim is facially plausible, the Court must draw on its judicial experience and common sense.[7]  All well-pleaded facts are assumed to be true

---

[4] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Ridge at Red Hawk*, 493 F.3d at 1177 (emphases in original).

[6] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation omitted).

[7] *Iqbal*, 556 U.S. at 679.

and are construed in the light most favorable to the non-moving party.[8]  "Although plaintiff need not allege every element of [its] action in specific detail, [it] cannot rely on conclusory allegations."[9]

### III.    Analysis

**A.    Sims' Motion to Stay and Leave to File a Supplemental Response**

Sims filed a motion asking the Court to stay its ruling on the two pending motions to dismiss to allow him the opportunity to supplement his Response.  Before the Court ruled on this motion, Sims filed a second motion for leave to file a supplemental response or, in the alternative, to amend the responses filed by his withdrawn counsel; Sims attached his proposed pleading to his motion.  Because Sims filed his proposed supplemental response before the Court issued its ruling on either motion to dismiss, Sims' Motion for a Stay is denied as moot.

Sims argues that his supplemental response is necessary because his withdrawn counsel, Daniel Cortez, who filed the Responses to Norwood and KDOC's motions to dismiss, previously represented Corizon Health Services ("Corizon"), a company providing healthcare to KDOC inmates.  Sims states that on August 27, 2018—before this lawsuit was filed—Cortez "informed [Sims] he could not pursue a claim against one of the defendants listed in his Complaint because of a conflict of interest with both himself and his firm regarding Corizon."[10]  Sims does not specify which defendant named in the complaint or what type of claim he wished to pursue that relates to Corizon.  Sims also states that Cortez refused to conform the Complaint and his Response to

---

[8] *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 771 F.3d 697, 700 (10th Cir. 2014).

[9] *See Hall v. Bellmon*, 935 F.2d 1106, 1113 (10th Cir. 1991) (internal citations omitted).

[10] Doc. 45, at 3.

"newly-discovered evidence introduced by Defendants" at the hearing for a preliminary injunction. Sims highlights evidence the Defendants presented at the hearing that Sims was transferred to Florida because of issues Sims had with Corizon's medical services.

It was Defendants' position at the preliminary injunction hearing that Sims was not transferred in retaliation for exercising his First Amendment rights but rather to ensure he could receive the medical services he needed. Defendants argued that Sims was unhappy with his medical care from Corizon and that Sims was transferred to Florida because the FDOC does not contract with Corizon. Evidently, Sims wishes to pursue a claim based on this new information— although the details of that claim have not been disclosed to the Court. Nevertheless, Sims' assertions, taken as true, do not support the necessity for filing a supplemental response to the pending motions to dismiss. By Sims' admission, he knew before this case was filed that Cortez could not pursue a claim against Corizon and Sims' Complaint pursues no such claim. If Sims wished to pursue a claim involving Corizon at that time, he could have sought different counsel or proceeded pro se. If Sims believes he has a new, alternative claim that involves Corizon based on the evidence introduced at the preliminary injunction hearing, the Court recognizes Cortez would not be able to pursue that claim on Sims' behalf. However, Sims has not demonstrated that Cortez was under a conflict of interest when he filed the unrelated responses to KDOC and Norwood's motions to dismiss.

Nevertheless, the Court has fully reviewed and considered Sims' proposed supplemental response. Even upon full consideration of the arguments Sims makes in his proposed pleading, the Court concludes that Sims' supplemental response does not change the Court's analysis on either pending motion to dismiss. Because Sims' supplemental response does not supply the Court

with reason to deny either motion to dismiss, granting the motion is futile.  Therefore, the Court denies the motion.

**B.      KDOC's Motion to Dismiss**

KDOC moves the Court to dismiss all claims against it for two reasons.  First, KDOC argues that it lacks the capacity to be sued in federal court.  Second, KDOC argues that Sims' claims against it are barred by the Eleventh Amendment to the United States Constitution.  Because the Court concludes that KDOC lacks the capacity to be sued, the Court need not consider KDOC's Eleventh Amendment immunity argument.[11]

"A party's capacity to sue or be sued in federal court is determined by state law."[12]  "Under Kansas law, absent express statutory authority, legislatively-created government agencies lack the capacity to sue or be sued."[13]  The KDOC is a legislatively-created government agency, and Kansas law does not permit it to sue or be sued.[14]  Accordingly, the Court holds that KDOC lacks the capacity to be sued and KDOC's Motion to Dismiss is granted.

**C.      Secretary of Corrections' Motion to Dismiss**

Sims named KDOC's former Secretary of Corrections, Joe Norwood, as a defendant in both his individual and his official capacity.  Sims' Complaint, however, seeks only injunctive relief; in these types of cases, "plaintiffs may sue individual-capacity defendants only for money

---

[11] Sims' Response and proposed Supplemental Response addressed the Eleventh Amendment immunity issue, but Sims did not discuss the absence of express statutory authority authorizing KDOC to be sued.

[12] *McCoy v. Aramark Corr. Servs. et al.*, 2017 WL 2572806, at *1 (D. Kan. 2017) (citing Fed. R. Civ. P. 17(b)).

[13] *Grayson v. Kansas*, 2007 WL 1259990, at *3 (D. Kan. 2007) (citing *Hopkins v. State*, 237 Kan. 601, 702 P.2d 311, 316 (1985)).

[14] *Id.* (citing K.S.A. § 75–5203); *see also McCoy*, 2017 WL 2572806, at *1.

damages and official-capacity defendants only for injunctive relief."[15]  Thus, because he is only seeking injunctive relief, Sims has not alleged a viable individual-capacity claim against Norwood. An official-capacity claim is essentially a claim against the entity rather than the individual.[16]  The Court notes that Norwood is no longer the Secretary of Corrections for KDOC and the current Secretary of Corrections, Jeff Zmuda, is automatically substituted in Norwood's place on the official-capacity claims.[17]  For clarity, because Zmuda is substituted for Norwood but the parties pleadings refer to Norwood, the Court will refer to Zmuda by title ("the Secretary") rather than by name.

The Secretary's Motion seeks dismissal under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on the following grounds: mootness or lack of standing, Eleventh Amendment immunity, failure to exhaust administrative remedies, and failure to state a claim.

### 1.    *Mootness or lack of standing*

The Secretary argues that Sims lacks standing to challenge the religious policies at KDOC or, alternatively, his requests are moot now that he has been transferred to Florida.  Under Article III of the Constitution, federal courts have jurisdiction over only "cases" and "controversies."[18]  "One of the controlling elements in the definition of a case or controversy under Article III is

---

[15] *Brown v. Montoya*, 662 F.3d 1152, 1161, n. 5 (10th Cir. 2011).

[16] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . .  It is not a suit against the official personally, for the real party in interest is the entity.").

[17] Indeed, this automatic substitution has already taken place once before in this lawsuit when Roger Werholtz replaced Norwood as the acting Secretary.  *See* Doc. 58.  Werholtz has since been replaced by Zmuda.

[18] U.S. Const. art. III, § 2, cl. 1.

standing."[19]  "The requisite elements of Article III standing are well established: 'A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.' "[20]  As the Secretary correctly points out, Sims' request for injunctive relief is extraordinarily broad, seeking to vindicate the religious rights of all Apostolic inmates at every KDOC facility.  The Court agrees that Sims lacks standing to challenge policies at KDOC facilities in which he is not incarcerated, as Sims does not suffer any personal injury from those policies.

Additionally, the Secretary argues that even if Sims had a justiciable claim regarding the conditions of his confinement, that claim would be moot now that Sims has been transferred from EDCF to an FDOC facility.  The Court recognizes that "[a] prisoner's release from or transfer out of a prison system generally moots claims for declaratory and injunctive relief for claims concerning conditions in that system"[21] and that Sims has not requested any injunctive relief regarding his treatment at the FDOC facility where he is currently held.  Because Sims is no longer subject to the conditions of confinement at EDCF, the Court concludes that Sims lacks standing to challenge those conditions.  However, Sims does challenge the legality of his transfer to FDOC, alleging that he was transferred in retaliation for exercising his protected First Amendment rights. The Court holds that Sims does have standing to bring his First Amendment retaliation claim and that this claim was not rendered moot by his transfer to FDOC.

---

[19] *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 598 (2007) (citations, alterations, and quotations omitted).

[20] *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

[21] *Warner v. Patterson*, 534 F. App'x 785, 788 (10th Cir. 2013) (citations omitted).

2.     *Eleventh Amendment immunity*

Eleventh Amendment immunity, if effectively asserted, strips the Court of subject matter jurisdiction.[22]   Under the Eleventh Amendment, "states may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity."[23]   Furthermore, this immunity applies to suits against state agencies as well as state officials acting in their official capacities.[24] Under the well-known *Ex parte Young* doctrine, however, "the Eleventh Amendment does not bar suit against state officials in their official capacities if it seeks prospective relief for the officials' ongoing violation of federal law."[25]   To come within the *Ex parte Young* exception, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[26]   From the Court's perspective, the relevant question is therefore whether Sims' transfer to Florida qualifies as an ongoing violation of federal law for *Ex Parte Young* purposes.   Although neither party cites authority addressing this narrow question, the Court finds the Tenth Circuit's unpublished opinion in *Rounds v. Clements*[27] instructive on this matter.

---

[22] *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (citations omitted).

[23] *Collins v. Daniels*, 916 F.3d 1302, 1315 (10th Cir. 2019) (citations, alterations, and quotations omitted).

[24] *Id.* (citation omitted).

[25] *Odhuno v. Reed's Cove Health & Rehab., LLC*, 355 F. Supp. 3d 1026, 1050 (D. Kan. 2018) (citing *Harris v. Owens*, 264 F.3d 1282, 1290 (10th Cir. 2001)).

[26] *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quotation and alteration omitted).

[27] 495 F. App'x 938 (10th Cir. 2012).

In *Rounds*, the plaintiff was an inmate who also held a job as an electrician inside the Colorado prison system.  The plaintiff alleged that prison officials told him to perform shoddy electrical work that violated professional standards and state code.  When the plaintiff complained of this to higher ranking prison officials, they retaliated against him by transferring him to a less desirable facility where he lost his ability to work as an electrician and other privileges.  The plaintiff filed suit under § 1983, alleging First Amendment retaliation.  The plaintiff named the Executive Director of the Colorado Department of Corrections as a defendant in the lawsuit; notably, the Executive Director was not involved in the original decision to transfer the plaintiff and strip him of his various privileges, but he possessed the authority to remedy the alleged wrong.[28]  The defendant claimed he was entitled to Eleventh Amendment immunity and filed a motion to dismiss on that basis.  The District Court denied the motion, and the Tenth Circuit affirmed that decision.  Then Circuit Judge Neil Gorsuch wrote for the court:

> In his appeal, [the defendant] argues that we should grant him immunity from suit because, contrary to the district court's ruling, he hasn't participated in any ongoing violation of federal law as required by *Ex parte Young*.  The problem with this argument is that [the plaintiff's] operative complaint alleges *that he is currently, on an ongoing basis, being denied his previous prison placement* and many other privileges in retaliation for exercising his First Amendment rights. . . .  And there is no dispute [the plaintiff] added [the defendant] to the suit because [the defendant] alone has the power to undo this state of affairs . . . something [the defendant] has so far declined to do.  As remedy, [the plaintiff] seeks only a prospective injunction forcing [the defendant] to restore the privileges he has not chosen to restore voluntarily. . . .  Drawing the reasonable inference in [the plaintiff's] favor—as we must at this, the motion to dismiss stage—*it is plain enough [the plaintiff] alleges that [the defendant] is currently participating in an ongoing scheme to deny [the plaintiff] a prison placement and privileges that he once enjoyed*, all in retaliation for exercising his First Amendment rights.[29]

---

[28] *Id.* at 940.

[29] *Id.* (emphasis added).

-12-

The Court notes that the cases upon which *Rounds* relies mostly address retaliatory transfers in the context of employment law, not prison placement.[30]  But *Rounds* is unequivocal that denying an inmate "a prison placement . . . that he once enjoyed" in retaliation for exercising a protected right sufficiently implicates *Ex parte Young*.[31]  The Court agrees with *Rounds*' reasoning and reaches a similar conclusion here.  The Secretary's argument, taken to its logical end, would mean that a retaliatory transfer ceases to be an ongoing violation of federal law once the prisoner reaches his destination.  If this were true, Sims could rely on *Ex parte Young* only if he somehow litigated his claims while in transit between prisons: a feat that would surely impress the most accomplished of litigators and escape artists.  But this makes no more sense than concluding—to borrow an illustration from the employment law context—that an employer's retaliatory termination of an employee ceases to be an ongoing violation once security escorts the employee out of the building.  It is not the physical act of transferring Sims that is the violation of federal law but rather the stripping of privileges (including prison placement) he once enjoyed for retaliatory reasons.  Here, Sims alleges that he was transferred to Florida in retaliation for exercising his First Amendment rights and that he remains in Florida.  Based on these facts, the Court holds that Sims adequately alleges an ongoing federal violation by virtue of being denied his previous, desirable prison placement.  Consistent with *Rounds*, Sims' retaliation claim fits squarely within *Ex parte Young*.  Thus, the Secretary is not entitled to Eleventh Amendment immunity, and the Court retains subject matter jurisdiction in this case.

---

[30] *Id.* at 940–41 (citations omitted).

[31] *Id.* at 940.

-13-

### 3.    *Exhaustion of administrative remedies*

The parties argue extensively about whether Sims exhausted available administrative remedies regarding KDOC's failure to accommodate his religious beliefs.  Considering the Court's ruling that Sims' conditions of confinement claims for injunctive relief are now moot, the Court will not address those arguments.  Instead, the Court will only address whether Sims failed to exhaust the administrative remedies available to him with regard to his transfer to Florida.  The Secretary argues that Sims could have appealed his transfer to FDOC using the custody classification appeal process in IMPP 11-106 or, since Sims alleges the transfer to Florida was retaliatory, Sims could have appealed using the inmate grievance procedure in K.A.R. § 44-15-101 *et seq.*  It is undisputed that Sims did not exhaust either administrative remedy.  Instead, Sims attempts to excuse his noncompliance by arguing that neither remedy was available to him.[32]

Under the Prison Litigation Reform Act ("PLRA"), prisoners may not bring an action under any federal law regarding prison conditions "until such administrative remedies as are available are exhausted."[33]  "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient."[34]  Exhaustion of administrative remedies—which "protects administrative agency authority and promotes efficiency"[35]—is

---

[32] *Beals v. Jay*, 730 F. App'x 633, 636 (10th Cir. 2018) ("Because the exhaustion doctrine is an affirmative defense, [defendants] 'bear the burden of asserting and proving that [plaintiffs] did not utilize administrative remedies.' But once [defendants] prove failure to exhaust, 'the onus falls on [plaintiffs] to show that remedies were unavailable to [plaintiffs].'") (internal citations omitted).

[33] 42 U.S.C. § 1997e(a).

[34] *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007).

[35] *Beals*, 730 F. App'x at 636.

mandatory and the Court has no authority to dispense with the requirement.[36]  However, if "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust."[37]  Although exhaustion is mandated by federal law, it is the prison's grievance procedures that determine what remedies are available, not the PLRA.[38]

   "The KDOC makes a four-step grievance procedure available to its inmates, which must begin with an attempt at informal resolution, and thereafter proceed through three 'levels of problem solving.' "[39]  This procedure is codified in K.A.R. § 44-15-101 *et seq.* and requires the following: (1) an attempt at informal resolution with the unit team member; (2) a formal grievance report submitted to the appropriate unit team member; (3) submission of the grievance to the warden; and (4) submission of the grievance to the Secretary of Corrections.[40]  If an inmate does not receive a timely response at any point during the grievance process, the inmate is allowed to move to the next step of the process.[41]

   The inmate grievance process is "applicable to a broad range of matters that directly affect the inmate, including . . . [c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections . . . and actions by employees and

---

[36] *Kling v. Cline*, 2014 WL 1493169, at *3 (D. Kan. 2014) (citations omitted).

[37] *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010).

[38] *Huggins v. Reilly*, 679 F. App'x 679, 681 (10th Cir. 2017).

[39] *Markovick v. Werholtz*, 2012 WL 415456, at *14 (D. Kan. 2012).

[40] *Marshall v. Wiebe*, 2018 WL 1806760, at *4 (D. Kan. 2018).

[41] K.A.R. § 44-15-102(a)(2), (b), (c)(1).

inmates, and incidents occurring within the facility."[42]  The grievance procedure, however, "shall not be used in any way as a substitute for, or as part of, the inmate disciplinary procedure, *the classification decision-making process*, the property loss or personal injury claims procedure, or the procedure for censorship of publications . . . ."[43]

Sims argues that he could not use the inmate grievance process to challenge his transfer to Florida because housing transfers are part of the classification decision-making process, and § 44-15-101a expressly precludes using the inmate grievance procedure to challenge classification decision.[44]  Sims may be correct that he could not use the inmate grievance procedure to challenge an interstate transfer made under ordinary circumstances.  However, the Court agrees with the Secretary's position that because Sims alleges the transfer was for retaliatory rather than legitimate reasons, the inmate grievance procedure was the appropriate remedy for Sims to seek redress.[45]  Given Sims failure to follow the available grievance procedure to exhaustion, the Court is compelled to dismiss Sims' retaliatory transfer claim.[46]

---

[42] K.A.R. § 44-15-101a(d)(1).

[43] K.A.R. § 44-15-101a(d)(2).

[44] Sims also argues that the classification decision appeal process articulated in IMPP 11-106 was unavailable because it provides a mechanism to appeal *custody* classification decisions but not housing classification decisions.

[45] *See Kesterson v. Roberts*, 2017 WL 5184365 (Kan. Ct. App. 2017), *review denied* (Apr. 26, 2018) (recognizing that the grievance procedure is an appropriate method to address an inmate's alleged retaliatory transfer); *Lynn v. Simmons*, 32 Kan. App. 2d 974, 95 P.3d 99, 101–02 (2003) (explaining that the grievance procedure is available to challenge an interstate transfer made in retaliation for exercising First Amendment rights); *see also Markovick v. Werholtz*, 2012 WL 415456, at *8, *14 (D. Kan., 2012) (concluding that an inmate's retaliation claims would subject to dismissal for failure to exhaust administrative remedies when the inmate "[did] not show that he grieved a claim of retaliation that was rejected at all levels as a challenge to classification").

[46] Dismissal for failure to exhaust administrative remedies is made without prejudice.  If Sims exhausts the administrative remedies available to him in K.A.R. § 44-15-101 *et seq*, he may then pursue his retaliation claim in federal court.  But he must first avail himself of the available administrative remedies to allow Defendants the opportunity to address his concerns.  *See Jones v. Bock*, 549 U.S. 199, 204 (2007) ("Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.").

**D.      Sims' Motion to Sever**

As a final matter, Sims filed a motion to sever Counts 5 and 6—the two counts relating to Sims' transfer from EDCF to a FDOC facility—and direct the Clerk of the Court to initiate a new, separate, and independent action on those claims.  The new case would seek to add as defendants Johnnie Goddard, Doug Burris, and Roger Werholtz.   Goddard and Burris were previously voluntarily dismissed in this lawsuit.  Sims contends that his counsel, Cortez, wrongly omitted from the Complaint the allegation that Sims was transferred in retaliation for filing a complaint about Corizon with the Kansas State Board of Healing Arts.  Sims now wishes to pursue his claims under Counts 5 and 6 under that theory.

Sims relies on Federal Rule of Civil Procedure 21, which permits the Court to "sever any claim against a party."[47]  "When determining whether severance is appropriate under Rule 21, the [C]ourt considers the convenience of the parties, avoiding prejudice, promoting expedition and economy, and the separability of law and logic."[48]  Sims provides no reason why severing Counts 5 and 6 is appropriate under Rule 21, and the Court sees none.  Liberally construed, the Court believes Sims' motion is more appropriately pursued as a Motion to Amend his Complaint.  But even if the Court construes Sims' motion in this way, the motion would still be denied because it is futile.[49]  Under the current Complaint, Sims alleges that he was retaliated against for exercising his First Amendment rights.  The reason Sims' retaliation claim is dismissed, however, is due to

---

[47] Fed. R. Civ. P. 21.

[48] *Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.*, 918 F. Supp. 343, 350 (D. Kan. 1996).

[49] *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001) (A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason).

his failure to exhaust administrative remedies.  If the Court allowed Sims to amend his complaint or sever these claims into a new case, his complaint would still be subject to dismissal for failure to exhaust his administrative remedies.  Thus, the motion is denied.

**IT IS THEREFORE ORDERED** that Defendant Kansas Department of Corrections' Motion to Dismiss (Doc. 17) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Joe Norwood's Motion to Dismiss (Doc. 18) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff Eric Sims' Motion to Stay and for Leave to File a Supplemental Response (Doc. 40) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff Eric Sims' Motion for Leave to File a Supplemental Response (Doc. 45) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff Eric Sims' Motion to Sever (Doc. 48) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 17th day of September, 2019.

This case is closed.

ERIC MELGREN
UNITED STATES DISTRICT JUDGE