**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ERIC D. SIMS,

       *Plaintiff,*

  vs.

Case No. 18-01259-EFM-KGG

KANSAS DEPARTMENT OF
CORRECTIONS, et al.,

       *Defendants.*

**MEMORANDUM AND ORDER**

Pro se Plaintiff Eric Sims sued Kansas Department of Corrections ("KDOC") and KDOC's

Secretary of Corrections ("the Secretary"), alleging several constitutional and statutory violations

relating to his treatment in prison.  The Court dismissed Sims' claims under Federal Rule of Civil

Procedure 12(b)(1) and (6) in a Memorandum and Order (Doc. 61) and Judgment was entered in

Defendants' favor  (Doc. 62).  Sims then filed a pleading entitled "Motion Requesting Additional

Findings and Conclusions Pursuant to Rule 52(b) (Doc. 63)."  For the following reasons, the Court

denies the Motion.

## I.    Factual and Procedural Background

The Court has outlined the facts of this case in some detail in prior orders.[1]  Succinctly stated, Sims is an inmate serving his sentence within the custody of the Kansas Department of Corrections ("KDOC").  Sims claims that during his incarceration, KDOC and its officials failed to accommodate his religious beliefs (the Apostolic faith) in a variety of ways.  Additionally, Sims claims that KDOC retaliated against him for exercising his First Amendment rights by transferring him to a prison in Florida.  Sims—along with a church that runs an Apostolic prison ministry and that church's pastor—brought this lawsuit against KDOC, the Secretary,[2] and ten other individually-named defendants seeking purely injunctive relief.

The church and its pastor eventually voluntarily dismissed all claims against all defendants and withdrew from the case.  Sims voluntarily dismissed all claims against every defendant except KDOC and the Secretary.  As the only remaining defendants, KDOC and the Secretary filed respective motions to dismiss.  After the motions were fully briefed, Sims' counsel withdrew from the case, leaving Sims to continue pro se.  Sims then filed a motion to file a supplemental response to the Defendants' motions to dismiss.  Sims argued that a supplemental response was appropriate because his counsel was under a conflict of interest when he filed the Responses on Sims' behalf.  Sims' proposed supplemental response expanded on several arguments already raised by his counsel; it also introduced several new arguments cautioning against dismissal.

---

[1] *See* Doc. 23, at 2–5 and Doc. 61, at 2–5.

[2] When the plaintiffs filed this lawsuit, Joe Norwood was the Secretary of Corrections.  However, Norwood has since been replaced by Jeff Zmuda, who is automatically substituted for Norwood in this lawsuit. *See* Doc. 61 at 9.

On September 17, 2019, the Court issued a memorandum and order ruling on Sims' motion to file a supplemental response, KDOC and the Secretary's respective motions to dismiss, and Sims motion to sever some of his claims into a new lawsuit. The Court denied Sims' motion to file a supplemental response. The Court determined that Sims' allegations, taken as true, did not show that his counsel was under a conflict of interest when he drafted and filed the Responses to Defendants' Motions to Dismiss and therefore had no bearing on whether Sims should be allowed to file a supplemental response. Furthermore, the Court determined—as an alternative reason to deny Sims' motion—that the supplemental response would not change the Court's ruling on the Defendants' motions to dismiss, so granting the motion would be futile.

Next, the Court granted KDOC and the Secretary's motions to dismiss. The Court held that KDOC lacked the capacity to be sued in federal court and granted dismissal on that basis. With regard to the Secretary's motion, the majority of Sims' requests for injunctive relief addressed how KDOC accommodated every Apostolic inmate at all KDOC facilities; Sims' Complaint never requested any injunctive relief related to his conditions of confinement in Florida. The Court held that Sims lacked standing to challenge prison conditions at KDOC facilities in which he is not incarcerated. To the extent Sims challenged prison conditions at KDOC facilities where he previously had been held, the Court deemed those claims moot upon Sims' transfer to Florida. Additionally, the Court held that Sims retaliatory transfer claim must be dismissed without prejudice, pursuant to the Prison Litigation Reform Act ("PLRA"), for failure to exhaust administrative remedies. Finally, the Court denied Sims' motion to sever.

On October 11, 2019, Sims filed the pleading now before the Court. Sims' pleading is captioned Motion Requesting Additional Findings and Conclusions Pursuant to [Federal] Rule [of Civil Procedure] 52(b). Sims argues that additional factual findings or conclusions of law are

necessary "to make it possible for Plaintiff to perfect his appeal to the 10th Circuit U.S. Court of Appeals."[3]  The Court now rules on Sims' Motion as follows.

## II.    Discussion

Sims brings his motion under Federal Rule of Civil Procedure 52(b).  "Rule 52(b) applies only to cases where findings of fact have been made by the district court after a trial."[4]  Here, the Court granted dismissal under Rule 12(b)(1) and (6) without a trial.  So, Rule 52 is not applicable at this stage of the litigation, providing sufficient reason to deny Sims' Motion.  However, the Court recognizes that Sims is proceeding pro se and the Court affords him some leniency in his filings.[5]  Construed broadly, the Court will consider Sims' Motion as a motion under Federal Rule of Civil Procedure 59(e) to alter or amend a judgment.[6]  The well-established grounds for relief under Rule 59(e) are: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[7]  Sims does not allege that the law has changed or that new evidence has been discovered; so, the only basis for granting the Motion is to correct clear error or prevent manifest injustice.  Sims indicates that the Court erred in holding many of his claims moot and in dismissing Sims' retaliatory transfer claim for failure to exhaust administrative remedies.  The Court will address each in turn.

---

[3] Doc. 63, at 3.

[4] *Holmes v. Grant Cty. Sheriff's Dep't*, 772 F. App'x 679, 680 (10th Cir. 2019); *see* Fed. R. Civ. P. 52(a) (stating that Rule 52 applies when "an action [is] tried on the facts without a jury . . . ").

[5] *Duncan v. Quinlin*, 622 F. App'x 735, 736 (10th Cir. 2015) (recognizing that pro se pleadings are to be liberally construed) (citation omitted).

[6] *Holmes*, 772 F. App'x at 680; Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.")

[7] *Id.* (citation and quotations omitted).

## A. Mootness

Sims argues that the Court erred in holding Sims' conditions of confinement claims moot. Before addressing Sims' specific arguments, however, the Court highlights the limited scope of the Court's mootness analysis. In general, Sims' Complaint broadly alleges that KDOC's accommodation of Apostolic inmates is woefully inadequate, and his request for injunctive relief requests that KDOC provide specific accommodations for Apostolic inmates at all KDOC facilities. However, as the Court previously explained, Sims does not have legal standing to pursue claims on behalf of other inmates or to challenge unlawful practices at KDOC facilities in which he is not incarcerated.[8] Rather, Sims only has standing to challenge policies and practices that caused *him* personal injury. The Court's mootness analysis was therefore limited to Sims' allegations that KDOC failed to accommodate Sims' religious beliefs. Sims made several allegations that he was denied religious accommodations while he was held at KDOC's Norton Correctional Facility ("NCF") and El Dorado Correctional Facility ("EDCF"). But Sims is now incarcerated at a Florida Department of Corrections ("FDOC") facility, not NCF or EDCF. Furthermore, Sims' request for injunctive relief does not seek any remedies associated with his incarceration in Florida (despite Sims filing his Complaint months after his transfer). For those reasons, the Court determined that, while Sims may have been personally injured by the lack of accommodations at NCF or EDCF, his efforts to improve the religious accommodations at those facilities are moot now that Sims is in Florida. If Sims is being denied religious accommodations at the FDOC facility, he is free to pursue a claim on that basis. But he has not done that in this

---

[8] Doc. 61, at 9–10.

lawsuit, and granting Sims' requests to provide additional accommodations for Apostolic inmates at NCF or EDCF will have no effect on Sims' religious liberties in Florida.

Sims provides three reasons he believes the Court's mootness determination was incorrect. First, Sims states that "although a specific agency action may be mooted (interstate transfer), he has standing to challenge the future implementation of the underlying religious classification and interstate transfer policy."[9] Second, Sims states that the Court should have applied the "capable of repetition, yet evading review" exception to the mootness doctrine. Third, Sims argues that the Court could still order a partial remedy, namely: expunge his prison record or provide a retroactive pre-transfer hearing.

Under Sims' first argument, Sims contends that his claims are not moot because he is still subject to KDOC's "interstate transfer" and "religious classification" policies. Starting with the interstate transfer policy, the Court's Memorandum and Order did not conclude that Sims' retaliatory transfer claim was moot; rather, the Court held the opposite.[10] So, this argument is without merit. Sims' argument that he is still subject to KDOC's "religious classification" policy is likewise unavailing. KDOC's policy, IMPP 10-110D, states that inmates:

> *[S]hall be permitted to practice a religion to which they sincerely ascribe* within the limitations imposed by individual facility physical structures, staffing levels, other considerations of security, good order and discipline, consistent with consideration of costs and limited resources. All limitations or prohibitions shall be consistent with considerations of whether the limitation or prohibition is in furtherance of a compelling government interest and is the least restrictive means of furthering that compelling governmental interest.[11]

---

[9] Doc. 63, at 2.

[10] Doc. 61, at 10 ("The Court holds that Sims does have standing to bring his First Amendment retaliation claim and that this claim was not rendered moot by his transfer to FDOC.").

[11] Doc. 1, Ex. E.

IMPP 10-110D also provides a mechanism for inmates to request specific religious accommodations.[12]

In his Complaint, Sims takes issue with IMPP 10-110D not including the Apostolic faith on its Religious Affiliation form[13] or its Reference Table of Religious Tenets[14] despite specifically listing 21 other religions. Sims alleges that this demonstrates that the KDOC policy does not recognize the Apostolic faith as a discrete religion and is therefore discriminatory. The Court disagrees. The Religious Affiliation form, after listing 21 possible religious affiliations, has a final option of "Other" followed by a blank space for the inmate to provide a religious affiliation. Additionally, IMPP 10-110D includes a Request for Accommodation of Religious Practices form, which asks: "If this religion is not already listed, what is the accommodation you are requesting?"[15]

Clearly, KDOC's policy takes into account that inmates may have a religious affiliation other than one listed in IMPP 10-110D. It would be impractical (foolhardy, even) for KDOC to provide an exhaustive list of all religions on either form. IMPP 10-110D broadly states that inmates are "permitted to practice a religion to which they sincerely ascribe" and allows inmates of any religious affiliation to seek religious accommodation. Sims alleges that while he was incarcerated at NCF and EDCF, KDOC officials failed to accommodate his religious beliefs (as required by IMPP 10-110D). But he alleges no facts suggesting the policy itself is discriminatory. Thus, even if Sims remains under the purview of KDOC's religious classification policy, Sims'

---

[12] Doc. 1, Ex. G.

[13] Doc. 1, Ex. F.

[14] Doc. 1, Ex. D.

[15] Doc. 1, Ex. G.

claim is still moot unless he alleges that his religious beliefs are not being accommodated in Florida

and seeks injunctive relief addressing his treatment in Florida. Here, Sims fails to do either.

Next, Sims argues that the "capable of repetition, yet evading review" exception to the

mootness doctrine applies to his claims.[16] This exception is "narrow" and is limited to "exceptional

circumstances."[17] Sims bears the burden of showing "(1) the challenged action was in its duration

too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable

expectation that the same complaining party will be subjected to the same action again."[18] The

Court holds that Sims has failed to satisfy either prong. At one point in his Complaint, Sims states

that KDOC failed to accommodate his Apostolic faith for 20 years before he was transferred to

Florida. This is more than sufficient time for the matter to be fully litigated.[19] Additionally, Sims

has not demonstrated a reasonable expectation that he will be incarcerated in a KDOC facility in

the future.

Finally, Sims argues his case is not moot because the Court can still provide him with a

partial remedy. Specifically, Sims states that the Court could order KDOC to provide him with a

retroactive pre-transfer hearing; he also states that the Court could order KDOC to expunge his

prison record of all references "to any administrative, legislative, or legal actions" he took during

---

[16] "In general a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. . . . We have recognized an exception to the general rule in cases that are capable of repetition, yet evading review." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (internal citations and quotations omitted).

[17] *Ind v. Colorado Dep't of Corr.*, 801 F.3d 1209, 1215 (10th Cir. 2015) (citations omitted).

[18] *Id.* (citations, alterations, and quotations omitted).

[19] *Burnett v. Fallin*, 785 F. App'x 546, 552 (10th Cir. 2019) (concluding that an inmate failed to prove the first prong of the "capable of repetition, yet evading review" when the inmate alleged that "the infringement on his constitutional rights lasted for several years").

his incarceration. As the Court explained earlier in this case, Sims is not entitled to a pre-transfer hearing.[20] So, this remedy—which the Court notes is not one of the many remedies Sims requested in his complaint and was not raised until Sims' proposed supplemental response—does not change the Court's mootness determination. Additionally, Sims argues that his retaliation claim is not moot because the Court could still order KDOC to expunge his prison record.[21] As discussed above, Sims' retaliation claim was dismissed without prejudice for failure to exhaust administrative remedies, not because it was moot. So, while the Court agrees with Sims that this remedy was not rendered moot by his transfer to Florida, it has no relevance to the Court's analysis here. In sum, the Court concludes that there was no clear error or manifest injustice in the Court's prior ruling with regard to its mootness determination. Therefore, Sims' request to alter or amend the Court's ruling on that issue is denied.

## B. Exhaustion of administrative remedies

Next, Sims argues that his First Amendment retaliation claim should not have been dismissed without prejudice for failure to exhaust administrative remedies. Sims asserts that he appealed his retaliatory transfer and received a "final decision" from the Secretary; he also asserts, in the alternative, that his transfer to Florida made administrative remedies unavailable. Under his first argument, Sims alleges that he appealed his involuntary transfer to Doug Burris, "who provides the official response of the Department to appeals to the Secretary," and Burris told Sims that the issue would "not be revisited." Sims' argument is flawed for at least two reasons. First, "substantial or partial compliance with grievance procedures is not sufficient for exhaustion" under

---

[20] Doc. 23, at 13-14 (concluding that neither federal nor Kansas law entitles Sims to a hearing before an interstate transfer).

[21] *See* Doc. 45, Attach. 1, at 25–26.

the PLRA.[22]  Rather, "an inmate may only exhaust by properly following *all of the steps* laid out in the prison system's grievance procedure."[23]  Here, that means Sims was required to follow KDOC's four-step administrative procedure,[24] and Sims admittedly never pursued the first three steps.

Furthermore, the Court concludes that Sims' communication with Burris does not satisfy the fourth step in the administrative grievance process.  After he was transferred to FDOC, Sims wrote a letter to Burris asking why he had been transferred to Florida, and Burris replied that this information was confidential and would not be provided.  Months later, Sims wrote another letter to Burris where he again asked for the reason he was transferred to Florida and who at the KDOC facility authorized his transfer.  It was in response to this question that Burris replied: "This question has already been addressed and will not be revisited."[25]  Nowhere in any of Sims' correspondence with Burris does Sims aver that he was transferred in retaliation for exercising his First Amendment rights.  Thus, even if it were permissible for Sims to skip the first three steps of the grievance procedure, Sims also failed to properly appeal his retaliation claim at the fourth step because he never informed Burris that he was claiming First Amendment retaliation.

---

[22] *McCoy v. Aramark Corr. Servs.*, 2018 WL 3957050, at *4 (D. Kan. 2018) (citing *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007)).

[23] *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (emphasis added).

[24] *Nunez v. Heimgartner*, 2018 WL 1427953, at *4 (D. Kan. 2018) (describing KDOC's four-step grievance procedure).

[25] Doc. 45, Attach. 1, at 50–52.

Finally, Sims argues that KDOC made administrative remedies unavailable by transferring him to another state.[26] Sims states that in Florida he does not have access to Kansas legal materials, KDOC forms, direct access to Unit Team assistance, or access to witness testimony. The Court first notes that an interstate transfer does not by itself render administrative remedies unavailable.[27] Furthermore, Sims does not claim that he attempted informal resolution or sought assistance in pursuing administrative remedies from any prison official, and neither does he claim that he requested a grievance form and was refused that request.[28] Absent any allegation that Sims sought redress through the administrative process, the Court cannot conclude that prison officials prevented, thwarted, or hindered his efforts. Indeed, until Sims brought this lawsuit, there is no indication that he ever informed any prison official that he believed his interstate transfer was retaliatory. The PLRA's mandatory exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."[29] Sims failed to give KDOC the opportunity to address his retaliatory transfer claim before he filed suit, and the Court cannot overlook his failure to pursue administrative remedies.[30] The Court therefore holds there was no clear error or manifest injustice in the Court's order

---

[26] *See Little* 607 F.3d at 1250 ("[T]he PLRA only requires the exhaustion of 'available' administrative remedies. . . . Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust.").

[27] *See Lynn v. Simmons*, 32 Kan. App. 2d 974, 95 P.3d 99, 102 (2003) (rejecting inmate's argument that an interstate transfer "effectively 'slammed the door shut' to KDOC's administrative grievance procedure").

[28] *Cf. Garcia v. Taylor*, 113 F. App'x 857, 859 (10th Cir. 2004) (agreeing "that refusing a prisoner grievance forms could raise an inference that the plaintiffs have exhausted 'available' administrative remedies").

[29] *Jones v. Bock*, 549 U.S. 199, 204 (2007).

[30] *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (explaining that "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion"); *Campbell v. Jones*, 684 F. App'x 750, 753 (10th Cir. 2017) ("There is no question that exhaustion is mandatory under the [PLRA] and that unexhausted claims cannot be brought in court.").

dismissing Sims' retaliatory transfer claim without prejudice for failure to exhaust administrative remedies.

**IT IS THEREFORE ORDERED** that Plaintiff Eric D. Sims' Motion Requesting Additional Findings and Conclusions Pursuant to Rule 52(b) (Doc. 63) is **DENIED.**

**IT IS SO ORDERED**.

Dated this 12th day of February, 2020.

This case remains closed.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE